UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JAMES M. DOWNEY,**

      **Plaintiff,**

v.                                         Case No. 2:13-cv-23595

**SOUTH CENTRAL REGIONAL JAIL AUTHORITY,
STEVEN C. TUCKER, SGT. MARK JARRETT,
CPL. M.B. RANSON, CO II MICHAEL RANSON,
CO GWENDOLYN GATRELL, CO II JEFF MELLINGER,
CO RUSSELL NAY, CO CHRIS STOVER, CO JEFF MILLER,
TERRI WALKER, and JOHN and JANE DOE,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter was removed by the defendants from the Circuit Court of Kanawha County on September 24, 2013. It is assigned to the Honorable Thomas E. Johnston, United States District Judge, and referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss. (ECF No. 4). For the reasons stated herein, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (ECF No. 4) be **GRANTED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff's Complaint, which is not a model of clarity, was initially filed in the Circuit Court of Kanawha County, West Virginia on August 14, 2013. (ECF No. 1, Attach. 1). The Complaint alleges that, on May 2, 2011, while the plaintiff was

incarcerated at the South Central Regional Jail ("SCRJ"), in Charleston, West Virginia, he was pepper sprayed by defendant CO II Michael Ranson, who acted "with malice and deliberate intent to cause abuse and harm to Plaintiff." (*Id.* at 6, ¶ 2). The plaintiff's Complaint further alleges that he was "blinded" by the pepper spray and, in an effort to "get away from the pain," he "fell over a rail two flights up and was severely injured." (*Id.* at 6, ¶ 5). The plaintiff further alleges that, despite his injuries, he was handcuffed and shackled and made to walk prior to receiving any medical attention. (*Id.*) The Complaint further alleges that defendants Sgt. Mark Jarrett, Cpl. Matthew Ranson, CO II Jeff Mellinger, CO Chris Stover and Terri Walker gave inaccurate, inconsistent, or untrue accounts of the events. The plaintiff alleges that this was done in an effort to cover up or protect the unlawful abusive actions of CO II Michael Ranson. (*Id.*, ¶¶ 1-5).1

The plaintiff further alleges that his injuries and his imprisonment were disabilities which denied him access to the courts from May 2, 2011 to September of 2012. (*Id.* at 4-5, ¶ 3). Thus, the plaintiff alleges that he was deprived of his rights under the First, Eighth and Fourteenth Amendments. (*Id.*)

## STANDARD OF REVIEW

The defendants' motion asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted against them, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

1  The only allegation against defendant Russell Nay (or May) is that he put handcuffs and shackles on the plaintiff before he was pepper sprayed and fell. (ECF No. 1 at 6, ¶ 4). The only allegation against defendant Steven Tucker is that Sgt. Mark Jarrett wrote out a report about this incident to him. (*Id.* at 5, ¶ 1). The Complaint contains no specific allegations concerning the conduct of defendants CO Gwendolyn Gattrell or CO Jeff Miller. Nor does the Complaint contain any allegations specifically concerning the "South Central Regional Jail Authority" (correctly named the West Virginia Regional Jail & Correctional Facility Authority).

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

On September 30, 2013, the defendants filed a Motion to Dismiss (ECF No. 4) and a Memorandum of Law in support thereof (ECF No. 5). The motion asserts that the plaintiff's Complaint should be dismissed in its entirety for the following reasons: (1) the Complaint is time-barred; (2) the plaintiff failed to give pre-suit statutory notice in accordance with W. Va. Code § 55-17-3; (3) the plaintiff failed to limit his request for damages to the applicable insurance available; (4) the plaintiff failed to exhaust his administrative remedies; (5) the plaintiff failed to set forth sufficient facts to state claims upon which relief may be granted; (6) the plaintiff's request for injunctive relief should be denied; (7) the plaintiff's request for punitive damages is barred by W. Va. Code § 55-17-4; (8) the defendants are entitled to qualified immunity; and (9) the defendants are not "persons" who can be sued under 42 U.S.C. § 1983. The undersigned will address each argument.

### A. The Complaint is time-barred.

The defendants' first assert that the plaintiff's Complaint was not timely filed under the applicable two-year statute of limitations. It is well-established that civil rights cases filed in federal court follow the analogous state limitation. *Blanck v. McKeen*, 707 F.2d 817 (4th Cir. 1983). West Virginia has a two-year statute of limitations for cases similar to § 1983 cases and other personal injuries. W. Va. Code § 55-2-12(b) (1981); *see McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278 (4th Cir. 1981; *Rodgers v. Corporation of Harpers Ferry*, 371 S.E.2d 358 (W. Va. 1988).

4

The defendants assert that the plaintiff's cause of action arose on May 2, 2011, the date of the incident alleged in the Complaint. (ECF No. 5 at 5). The plaintiff did not file his Complaint in the Circuit Court of Kanawha County until August 14, 2013. Thus, the Complaint was filed more than two years after the events giving rise to the cause of action. (*Id.*)

On October 22, 2013, the plaintiff filed a Response to the defendants' Motion to Dismiss (ECF No. 6). The plaintiff's Response asserts that the statute of limitations should be tolled because he was under a "disability" that prohibited him from filing his lawsuit, due to his injury and his incarceration. The plaintiff's Response states that "he did not have any opportunity to execute any type of civil action until he was transferred to St. Mary's Correctional Center on the date of September of 2011, when the disability/denial of court access was finally stopped." (*Id.* at 5-6). In support of his argument, the plaintiff cites cases from the State of Texas, which has a statutory provision that includes incarceration as a "disability" that tolls the filing of civil suits by prisoners during their incarceration. (*Id.* at 6).

As noted by the defendants in their Reply (ECF No. 7), West Virginia has no such tolling provision for incarceration. Their Reply states:

> Plaintiff's self-serving claims that he had no "opportunity to execute any type of civil action" while incarcerated is insufficient to toll the applicable statute of limitations. *See, Craigo v. Marshall*, 175 W. Va. 72 (W. Va. 1985). According to Plaintiff's Complaint, the events giving rise to the instant lawsuit occurred on May 2, 2011. (Compl. at pg. 4). The instant civil action was filed on August 14, 2013, over two years after the events giving rise to the Complaint.

5

(*Id.* at 2).[2]

The plaintiff's Complaint was clearly filed outside the applicable statute of limitations. Furthermore, the plaintiff had sufficient opportunity after he was released from the hospital to gather information necessary to file the instant lawsuit. Thus, the fact that the plaintiff suffered an injury that required hospitalization is an insufficient basis for tolling the statute of limitations. Likewise, the fact that the plaintiff was incarcerated at several different correctional facilities during the two-year period in which he could have timely filed his Complaint is not a valid basis for tolling the statute of limitations. His conclusory assertion that "he was not free from the initial restraint until he was transferred to St. Mary's Correctional Center" is insufficient to warrant tolling of the statute of limitations. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint is time-barred.

### B. Failure to Exhaust Administrative Remedies.

The defendants further assert that the plaintiff's Complaint must be dismissed because the plaintiff failed to exhaust the available administrative remedies. (ECF No. 5 at 7-9). Their Memorandum of Law states in pertinent part:

> On page 3 of the Complaint, Plaintiff concedes that, although there is a prisoner grievance procedure in South Central Regional Jail, he did not present the facts related to his Complaint within the grievance procedure. (Compl. pg. 3). Therefore, the Plaintiff's allegations have never been the subject of any internal grievance.

(*Id.* at 7-**8**).

---

2 The plaintiff attempted to file a sur-reply without leave of court. (ECF No. 8). The only new argument contained in the plaintiff's sur-reply is his attempt to apply a three-year statute of limitations found in 28 U.S.C. § 165, which is only applicable to claims filed in the U.S. Court of Claims. Because the plaintiff's argument is inapplicable to the instant case, the undersigned proposes that the presiding District Judge reject the same and otherwise disregard the plaintiff's unauthorized sur-reply brief (ECF No. 8) and the respondent's reply thereto (ECF No. 9).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means ". . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

In *Porter v. Nussle*, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong." Not only must a prisoner exhaust his administrative remedies, but he must also do so properly. Proper exhaustion "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues

7

on the merits.'" *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in *Jones v. Bock*, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. *Jones* also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. *Id.*, at 923. If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims. *Id.*, at 924-26.

The West Virginia statute pertaining to the requirement that prisoners exhaust remedies is found at West Virginia Code § 25-1A-2(a), which provides as follows:

> (a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; Provided, That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

W. Va. Code § 25-1A-2(a).

As noted by the defendants, the plaintiff fully acknowledges that he did not even attempt to exhaust the remedies available through the Regional Jail's grievance procedures; therefore, the defendants assert that the Complaint must be dismissed under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-12A-2(a). (ECF No. 5 at 9).

8

However, the plaintiff attempts to excuse his failure to exhaust because of the injuries allegedly sustained as a result of the incident complained of in his Complaint. His Response to the Motion to Dismiss states:

> Mr. Downey was so injured that he was unable and in no shape to physically do an Grievance procedure, until the time frame for a Grievance had expired according to D.O.C. Policy, and after he might have been able to file a Grievance was denied the right by the Regional Jail Authority and Mt. Olive Correctional Ctr. Thus a deliberate design to deny Mr. Downey the right to due process.

(ECF No. 6 at 3).

The defendants' Reply repeats, *verbatim*, the arguments made in their Memorandum of Law, emphasizing that exhaustion is mandatory and contends that the plaintiff's assertion that he was incapable of initiating the grievance process is baseless. (ECF No. 7 at 3-6).

In *Booth, supra*, the Supreme Court stated " we stress the point that we will not read futility or other exceptions into the statutory exhaustion requirements where Congress has provided otherwise." 532 U.S. at 471. Thus, courts have generally found no merit to arguments that prisoners were prevented from filing a timely administrative grievance. In the instant case, the undersigned sees no reason to hold otherwise because, despite his alleged injuries, the plaintiff has not demonstrated that he was unable to initiate the grievance process. *See also Hines v. Valhalla County Correctional Facility*, 2002 WL 1822740 (S.D.N.Y., Aug. 8, 2002) (Correctional facility inmate was not excused from PLRA exhaustion requirement despite claim that injuries kept him from filing necessary forms).

9

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff did not properly exhaust the required administrative remedies prior to filing this action and, thus, dismissal of the Complaint is required under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-12A-2(a).

### C. W. Va. Code §§ 55-17-3 and 55-17-4 and *Pittsburgh Elevator* are inapplicable.

The defendants further assert that the plaintiff's Complaint must be dismissed because the plaintiff failed to provide statutorily-required pre-suit notice under W. Va. Code § 55-17-3. (ECF No. 5 at 5-6). The plaintiff's Response to the defendants' Motion to Dismiss asserts that this pre-suit notice was not required because the West Virginia Regional Jail Authority "is privately owned and not a state entity." (ECF No. 6 at 5). The plaintiff's contention is inaccurate. The West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") is, in fact, a state agency; thus, the pre-suit notice would be required for certain actions filed against the WVRJCFA.

The defendants also assert that the plaintiff's claim for punitive damages is barred by the prohibition of punitive damages against the State under W. Va. Code § 55-17-4. (*Id.* at 14). The defendants further assert that the plaintiff's Complaint is "facially defective" because he fails to limit his request for recovery of damages to under and up to the State's insurance policy limits. The defendants contend that "such language is required by *Pittsburgh Elevator Co. v. West Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983), in order to avoid a defense of constitutional immunity from suit." (ECF No. 5 at 7). The plaintiff did not specifically address either the punitive damages issue or the *Pittsburgh Elevator* argument in his Response. (ECF No. 6).

10

Section 55-17-3 of the West Virginia Code, which requires that the State be given written notice thirty days before a plaintiff files suit, only applies to cases filed in the state courts. *See* W. Va. Code § 55-17-2 (defining an "action" as an action "instituted against a governmental agency <u>in a circuit court or in the supreme court of appeals</u>.") Although this action was instituted in the Circuit Court of Kanawha County, in *Felder v. Casey*, 487 U.S. 131, 145 (1988), the United States Supreme Court made it clear that "Notice of Claim" statutes, such as the one at issue here, and state immunity statutes, do not apply to claims raised under 42 U.S.C. § 1983, regardless of whether they are filed in federal or state court. Thus, the defendants' argument that the plaintiff's section 1983 claims are jurisdictionally barred because the plaintiff did not properly send the pre-suit notification is specious. The only potential claim that could be jurisdictionally barred under W. Va. Code § 55-17-3 is the plaintiff's claim under the West Virginia Constitution. Similarly, the bar against punitive damages under W. Va. Code § 55-17-4 could only apply to the plaintiff's state constitutional claim. *See Smith v. Wade*, 461 U.S. 30, 51 (1983) (Congress intended punitive damages to be available in section 1983 actions).

As noted in *Vaughan v. Sheely*, 2013 WL 8182783 (N.D. W. Va., Aug 12, 2013), however, "both West Virginia Code § 55-17-3 and *Pittsburgh Elevator Company* are state procedural requirements which only apply in state court. As this is federal court, and the plaintiff is proceeding under federal law, the 'state legislature has no authority to determine whether and how an action may proceed under federal law.'" (Citing *Cunningham v. West Virginia*, Case No. 6:06-cv-169, 2007 U.S. Dist. LEXIS 97020, *5 (S.D. W. Va. Feb. 14, 2007) and *Patsy v. Board of Reg. of State of Fla.*, 457 U.S. 496, 516 (1982)); *see also D.W. v. Walker*, 2009 WL 1393818 (S.D. W. Va. May 15, 2009)

11

(Goodwin, J.) ("the plaintiffs do not need to satisfy W. Va. Code § 55-17-3(a)(1)) and *Hampton by Bowling v. Tinder*, 732 F. Supp. 43 (S.D. W. Va. Apr. 6, 1989) (*rev'd on other grounds, Hampton v. Motley*, 911 F.2d 722 (4th Cir. 1990)) ("West Virginia Supreme Court's decision in *Pittsburgh Elevator* . . . only applies to suits in state court, not federal court."). Thus, to the extent that the defendants could have raised the *Pittsburgh Elevator* issue when this case was filed in Kanawha County, it appears that they waived the ability to raise such a defense upon removal.

For the reasons stated, the undersigned proposes that the presiding District Judge **FIND** that West Virginia Code §§ 55-17-3 and 55-17-4 and the SCAWV's decision in *Pittsburgh Elevator* are inapplicable to the plaintiff's federal constitutional claims brought under section 1983, and that the defendants waived their right to assert these arguments with respect to the plaintiff' state constitutional claim when they removed this action to federal court.

### D. Declaratory and Injunctive Relief is moot.

The plaintiff also seeks certain forms of injunctive relief in his Complaint. The defendants' Motion to Dismiss and Memorandum of Law in support thereof argue that the plaintiff is not entitled to such relief. Even if such relief were available, however, the plaintiff's claims for declaratory or injunctive relief are now moot, due to the plaintiff's transfer from the facility where the incident complained of occurred.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing

the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in Taylor, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's requests for declaratory and injunctive are moot, and must be dismissed.

### E.     The plaintiff's Complaint is subject to dismissal under *Iqbal*.

The defendants' Motion to Dismiss further asserts that the plaintiff has failed to allege any plausible claims for relief against the defendants. Their Memorandum of Law states:

> In this case, the Plaintiff alleges such minimal facts that, even in the light most favorable to the Plaintiff, fail to allege a cognizable legal claim against these Defendants. To the contrary, Plaintiff's Complaint is merely a long, rambling narrative of various conclusory statements of liability. The narrative, however, does not allege a cause of action against **any** of the Defendants. Indeed, there are **no** facts alleged against any individual Defendant that would support a cause of action. There is no explanation as to what constitutional right of the Plaintiff's was violated, and by whom. There is no allegation that any misconduct of the Defendants violated the Plaintiff's constitutional rights. Indeed, the Plaintiff fails to provide any criticism of the Defendants, save "untrue" reports completed after his fall,

> the use of pepper spray, and the fact that some Defendants attempted to raise the Plaintiff to his feet after his fall despite his injuries; however, assuming arguendo all of these facts to be true, they fail to support a § 1983 claim against these Defendants.

(ECF No. 5 at 9-10).

The defendants assert that the majority of the plaintiff's allegations are conclusory or legal in nature, are not entitled to the presumption of truth, and are insufficient to state a claim upon which relief can be granted pursuant to Rule 8 of the Federal Rules of Civil Procedure. (*Id.* at 10). The Memorandum of Law further states:

> The Plaintiff's Complaint herein contains minimal factual information. It alleges no conduct against any of the Defendants that gives rise to a cause of action. Other than vaguely accusing a few individual Defendants of preparing untrue reports (which incidentally has no bearing on the Plaintiff's purported physical injuries generally referenced in the Complaint), the Plaintiff makes no other relevant allegations that give rise to a cause of action. The Plaintiff does not even allege that the use of pepper spray was excessive in light of the circumstances. Indeed, the only arguable "misconduct" that conceivably may give rise to a constitutional violation given the allegations of the Complaint would be the Defendants' attempt to lift the Plaintiff despite his physical injuries; however, the Plaintiff fails to allege how such conduct violated a known constitutional right that a reasonable officer would know.

(*Id.* at 10-11).

The plaintiff's Response asserts that he has stated the following facts sufficient to state constitutional violations by the defendants:

> (1) Taking Mr. Downey out of his cell for no reason, (2) spraying Mr. Downey with pepper spray, causing severe pain for no justifiable reason, excessively to the point the floor was very slippery with pepper spray, (3) blinding Mr. Downey to the point that when he tried to get away from the blinding pain, miss stepped and slipped due to the slippery pepper spray on the floor as well as being blinded, thus going over the rail head over heals [sic; heels].

14

(ECF No. 6 at 3-4). The plaintiff's Response further asserts that "[t]his was clear deliberate indifference by an act done by the named Officer in the complaint, in an unprofessional manner, to an act known to be a high risk of causing injury to inmates, excessive use of pepper spray without just cause." (*Id.* at 4).

The defendants' Reply reiterates that the plaintiff's Complaint and Response do not describe any facts that are sufficient to "permit the court to infer more than the mere possibility of misconduct" and certainly does not demonstrate that the plaintiff is entitled to relief. Thus, the defendants contend that the Complaint must be dismissed under *Iqbal*. (ECF No. 7 at 6-8).

In accordance with the decisions in *Twombly* and *Iqbal*, the following factual allegations in the plaintiff's Complaint are entitled to a presumption of truth:

1. On May 2, 2011, the plaintiff was incarcerated at the SCRJ.

2. CO II Michael Ranson was the officer who caused injuries to the plaintiff on May 2, 2011.

3. The plaintiff was pepper-sprayed, blinded, fell over a railing and sustained numerous broken bones.

4. Terri Walker stated that she witnesses staff trying to make the plaintiff walk after being injured, while being restrained with cuffs and leg shackles.

5. Other named correctional officers, including First Sgt. Mark D. Jarrett, Cpl. Matthew Ranson, Officer Chris Stover and CO II Jeffrey Millinge [sic; Mellinger?] provided reports of the incident which contained inaccurate and conflicting information.

These facts do not permit the court to infer more than the mere possibility of misconduct sufficient to support claims under the First, Fifth, Eighth or Fourteenth Amendments. Thus, the undersigned proposes that the presiding District Judge **FIND**

that the plaintiff's allegations in his Complaint do not state a facially plausible claim against any of the defendants, and that the plaintiff's Complaint fails to state a claim upon which relief can be granted.

### F.  Official capacity claims.

The plaintiff's Complaint does not indicate whether the plaintiff is suing the defendants in either their official or individual capacities, or both. However, the plaintiff's claims against the WVRJCFA (improperly named in the Complaint as the "South Central Regional Jail Authority"), and each defendant in his or her official capacity, cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state

treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Accordingly, to the extent that the plaintiff has attempted to sue the defendants in their official capacities for monetary damages, the undersigned proposes that the presiding District Judge **FIND** that such claims must be dismissed under the Eleventh Amendment and the *Will* doctrine.

### G. Qualified immunity.

The defendants further assert that, to the extent that the plaintiff is suing them in their individual capacities, they are entitled to qualified immunity on all of the plaintiff's claims. Because the undersigned has proposed that the presiding District Judge find that the plaintiff's Complaint fails to state a claim upon which relief can be granted, it also stands to reason that, based upon the facts alleged in the plaintiff's Complaint, the defendants are entitled to qualified immunity because the plaintiff has not demonstrated that any of the defendants has violated a constitutional right of which a reasonable person would have known. Furthermore, as there are other reasons for the dismissal of the plaintiff's Complaint, there is no need to further address the qualified immunity issue.

### RECOMMENDATION

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 4) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).   Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 30, 2014

Dwane L. Tinsley
United States Magistrate Judge

18